**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 22, 2013**

# In the Court of Appeals of Georgia

A13A1197. AMERICAN RADIOSURGERY, INC. et al. v. RAKES.

PHIPPS, Chief Judge.

Bruce Rakes sued American Radiosurgery, Inc. (ARI) and its chairman and chief executive officer, John Clark, seeking damages under various theories in connection with a contract of employment executed by Rakes and ARI. Because the defendants thereafter failed to timely file responsive pleadings and respond to discovery requests, the trial court granted an initial default judgment, which default was subsequently opened; granted partial summary judgment against ARI, which ruling rested at least partly upon an unanswered request for admissions; and struck the defendants' answer as a sanction for discovery abuse, entering a default judgment regarding liability as to both defendants. After a hearing on damages, the court entered final judgment against ARI and Clark jointly and severally. Contested in this

appeal are the partial summary judgment, the sanction of striking the answer, and the final judgment. For reasons that follow, we affirm in part and vacate in part, and remand the case.

On March 21, 2008, Rakes filed a verified complaint that alleged the following. ARI was engaged in the business of marketing and selling a neurosurgical device used to treat brain tumors known as the "Rotating Gamma System." A key component of the device was a software application that aided in the targeting and radiation prescription used by the device. Rakes was a physicist and software engineer, who previously had helped develop a software application for a device similar to the Rotating Gamma System. For that prior work, Rakes had become well known and highly regarded in his field.

As Rakes's complaint continued, Rakes and ARI entered into an "Employment Agreement" that commenced in March 2004 and continued "until . . . such time as terminated by either party giving the other at least one month written notice." Pursuant to their Agreement, Rakes would perform duties as the company's "Director, Software Development" and would also serve as a company officer. His compensation included a specified annual salary; a "completion bonus," which was to be paid upon the first "successful installation and operation of the first paid

2

[Rotating Gamma System] using [the software application]"; and "ongoing royalty" of a designated amount for each Rotating Gamma System placed with a client. Also, the Agreement stated that ARI would "pay or reimburse" Rakes for expenses he incurred in connection with his employment.

Rakes further alleged that, during the course of his employment with ARI, the company failed to pay and reimburse him monies owed. Nevertheless, Rakes continued working on the software application until April 2007, when it was substantially complete. At that time, ARI owed him for, inter alia, outstanding salary, unpaid bonuses, and unreimbursed expenses. In June 2007, ARI terminated its relationship with Rakes. Since that time, ARI had installed a Rotating Gamma System in at least one hospital and had supplied the software application for another Rotating Gamma System. Meanwhile, ARI had disregarded Rakes's demands to be paid the amounts owed him, as well as his demands to discontinue holding him out as a company officer in the company's marketing materials.

In his complaint, Rakes sought to recoup monies under theories of recovery including breach of contract and misappropriation of name and likeness. Rakes also pursued attorney fees and litigation expenses under OCGA § 13-6-11. And Rakes

alleged that Clark had disregarded and abused the corporate form, and consequently was personally liable for any judgment entered against ARI.

Affidavits of a process server show that ARI and Clark (personally and in his capacity as ARI's agent) were personally served on April 10, 2008 with the complaint, summons, and numerous discovery requests. When neither ARI nor Clark filed an answer within the statutory period,[1] the trial court granted Rakes a "default judgment against Defendants on liability and judgment on all claims" on June 5, 2008.[2] Within a week, the defendants filed a verified answer and a motion to open default, wherein they claimed, inter alia, that they had not been served with process. After a hearing, the trial court granted on August 20, 2009 the defendants' motion to open default; the court noted Clark's claim that he had received the complaint (in his personal or corporate agent capacity) in the mail, but stated that it was "not specifically ruling upon the defense of proper [sic] service of process."

On September 23, 2009, Rakes filed a motion for partial summary judgment on his breach of contract claim against ARI, asserting that the company had failed to respond to his request for admissions that had been served with the complaint over

---

[1] See OCGA § 9-11-12 (a).

[2] See OCGA § 9-11-55.

4

a year earlier. Rakes argued that the admissions thereby made conclusively established that ARI was liable to him for failing to pay him as agreed and that only the amount of damages needed to be determined.

On September 30, 2009, Rakes filed a motion to strike the defendants' answer for failure to respond to the discovery requests. He asserted that, along with the complaint and respective summonses, each defendant had been served with discovery requests, and that ARI had also been served at that time with a request for admissions.

On October 26, 2009, ARI responded to the summary judgment motion, asserting that Rakes had failed to show that he had served the request for admissions. ARI pointed out that the process server's affidavit did *not* list any request for admissions. Rather, the affidavit had enumerated as documents served: "S & C; Ntc of Filing of Verification; 1st Requests for Prod. to Clark & ARI; 1st Interr. to Clark," which ARI understood as referring to "the Summons and Complaint, Interrogatories and Requests for Production of Documents." Moreover, ARI reasserted on Rakes's motion for summary judgment that it had never been served with process, citing Clark's affidavit that had been attached to the defendants' motion to open default, wherein Clark averred:

I was not personally served in my individual capacity, but rather only received the complaint and summons via US mail. . . . I was not personally served in my capacity as registered agent for the corporation, but rather only received the complaint and summons via US Mail.

ARI acknowledged, however, that it had "actual notice" of Rakes's request for admissions "by at least June 11, 2008, over a year ago." But it "denie[d] any inference that it was properly served with the disputed Requests for Admissions."

On November 2, 2009, ARI and Clark responded to Rakes's motion to strike their answer. In their response, they stated that "neither Defendant has received the disputed Interrogatories or Requests for Production of Documents that are referenced in Plaintiff's Motion to Strike" and that:

Defendants have denied ever being personally served with the Complaint. The defective service of the Complaint cannot become the basis for service of the disputed discovery requests. **There is no evidence that the discovery requests were ever properly served on either Defendant**. Plaintiff has not alleged that the discovery requests were ever served in any other manner other than the alleged and disputed service with the Complaint. This Court should permit this case to be decided on the merits.[3]

---

[3] (Emphasis in original.)

A few days later, ARI mailed its response to Rakes's request for admissions. And on November 6, "[o]ut of an abundance of caution," ARI filed a motion for leave to withdraw answers deemed admitted, maintaining that Rakes had not properly served it any request for admissions.

Rakes countered ARI's motion for leave, filing his attorney's affidavit stating that the lawyer had hired a process server to personally serve ARI and Clark, and that the documents counsel gave to the process server were the complaint, a summons to each defendant, interrogatories to ARI, interrogatories to Clark, a request for production of documents to each defendant, and requests for admissions to ARI. Further, the lawyer averred, he had *not* mailed any such documents to ARI or to Clark.

The record shows that, thereafter, on December 7, 2009, ARI responded to Rakes's interrogatories, Clark responded to Rakes's interrogatories, and both defendants responded to Rakes's request for production of documents.

Subsequently, the trial court entered the three orders contested in this appeal. In the first order, entered on December 16, 2009, the trial court granted Rakes's motion for partial summary judgment against the company. In the second order, entered on March 25, 2011, the trial court granted Rakes's motion to strike the

defendants' answer and for entry of default judgment against them as to liability. When the court convened a hearing on the issue of damages on August 10, 2011, defendants' counsel reported to the court that he had filed earlier that morning "Defendants' Motion to Open Default and to Vacate Order Filed March 25, 2011." Further, defendants' counsel stated that the defendants were not asking for a continuance and announced "ready to proceed with the damages hearing." Accordingly, Rakes testified regarding damages and presented evidence as to attorney fees and litigation expenses.

On June 20, 2012, the trial court entered the third order challenged in this appeal. By final judgment, the court denied the defendant's motion to open default and vacate order, and awarded to Rakes damages for the breach of contract claim, prejudgment interest on the breach of contract damages award, damages for misappropriation of name and likeness, as well as attorney fees and litigation expenses.

1. ARI challenges the grant of partial summary judgment entered against it on Rakes's breach of contract claim on the issue of liability.

In this contention, "[ARI] does not argue that the trial court erred in [its] application of the summary judgment standard."[4] Instead, ARI asserts that by granting partial summary judgment, the trial court effectively denied its motion to withdraw admissions. ARI charges the trial court with abuse of discretion,[5] maintaining that it was not properly served with the request for admissions and that without the allegations therein deemed true, there was no evidentiary basis to support the summary judgment ruling. "We therefore confine our analysis"[6] to whether ARI has demonstrated that the trial court abused its discretion by denying its motion to withdraw admissions.

OCGA § 9-11-36, which governs requests for admissions, provides that "[a] party may serve upon any other party a written request for the admission . . . of the

---

[4] *Patel v. Columbia Nat. Ins. Co.*, 315 Ga. App. 877, 877 (729 SE2d 35) (2012); see *Ogden Equip. Co. v. Talmadge Farms*, 232 Ga. 614, 615 (208 SE2d 459) (1974) (a motion for summary judgment is designed to test the merits of the claim); But cf. *Scanlan v. Tate Supply Co.*, 303 Ga. App. 9 (a) (692 SE2d 619) (2010) (explaining that because a motion for summary judgment is designed to test the merits of a claim, a defense such as lack of personal jurisdiction is generally not a proper subject for summary judgment).

[5] See *Sayers v. Artistic Kitchen Design LLC*, 280 Ga. App. 223, 226 (2) (633 SE2d 619) (2006) (noting that review of ruling on motion to withdraw admissions is for abuse of discretion).

[6] *Patel*, supra.

9

truth of any matters within the scope of subsection (b) of Code Section 9-11-36 [general provisions governing discovery] which are set forth in the request . . . ."[7] Pursuant to that statute,

> The matter is admitted unless, within 30 days after service of the request or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney.[8]

"Any matter admitted under [OCGA § 9-11-36] is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission."[9]

On appeal, ARI points out that whether it was served the request for admissions was disputed. Regarding that issue, the record shows that when ARI (and Clark) sought to open the initial default judgment, ARI announced that it was ready to proceed with discovery and trial of the issues, attaching to the motion, inter alia, a

---

[7] Id. at 879 (quoting OCGA § 9-11-36).

[8] OCGA § 9-11-36 (a) (2); see *G. H. Bass & Co. v. Fulton County Board of Tax Assessors*, 268 Ga. 327, 329 (1) (486 SE2d 810) (1997) (holding that "request for admission under OCGA § 9-11-36 (a) are not objectionable even if they require opinions or conclusions of law, as long as the legal conclusions relate to the facts of the case") (citations omitted).

[9] OCGA § 9-11-36 (b).

10

copy of Rakes's request for admissions. And later, in opposing Rakes's motion for summary judgment, ARI acknowledged having had the request for over a year, but asserted that service had not been perfected. After ARI made that claim, Rakes filed his attorney's affidavit stating that he had hired a process server to personally serve ARI with, among other documents, the request for admissions; that the request for admissions had been provided to the process server; and that he (the lawyer) had not *mailed* any document to ARI or to Clark.

"Proof of service may be made by certificate of an attorney or of his employee, by written admission, by affidavit, or by other proof satisfactory to the court. Failure to make proof of service shall not affect the validity of service."[10] Here, although the facts were disputed, the trial court was authorized to find that ARI had been duly

---

[10] OCGA § 9-11-5 (b).

11

served with Rakes's request for admissions.[11] Hence, this contention provides no basis for disturbing the grant of partial summary judgment against ARI.[12]

2. ARI and Clark contend that the trial court erred by striking their answer and entering against them (the second) default judgment as to liability. They point out that, prior to striking their answer, the trial court had neither issued an order to compel nor held a hearing on Rakes's motion to strike. Moreover, ARI and Clark assert that dismissing their answer was too harsh a sanction.

"[R]ulings on motions to strike and for entry of default judgment are reviewed by this Court using an abuse of discretion standard. Indeed, a trial judge has broad

---

[11] See *Roberts v. Roberts*, 226 Ga. 203, 205 (1) (173 SE2d 675) (1970) (construing language – "Proof of service may be made by certificate of an attorney or of his employee, or by written admission, or by affidavit, or other proof satisfactory to the court. Failure to make proof of service shall not affect the validity of service." – to mean that the mere averment of service, even though contradicted by opposing counsel, is sufficient basis for the trial court to find valid service); see also, e.g., *Tyson v. Automotive Controls Corp.*, 147 Ga. App. 409 (1) (249 SE2d 99) (1978) (recognizing that it is permissible to serve request for admissions by mail), cited in *Cruickshank v. Fremont Inv. & Loan*, 307 Ga. App. 489, 492, n. 8 (705 SE2d 298) (2010); see also *McKesson HBOC v. Adler*, 254 Ga. App. 500, 504 (1) (562 SE2d 809) (2002) ("The trial court is the trier of fact in discovery disputes.") (citation omitted).

[12] See generally *Deen v. Stevens*, 287 Ga. 597, 612 (3) (b) (698 SE2d 321) (2010) (explaining that a party "cannot avoid summary judgment by pointing to contradictory evidence in the record on an issue that makes no difference to the legal analysis").

discretion in the enforcement of the discovery provisions of the Civil Practice Act, and we will not interfere with the exercise of that discretion absent clear abuse."[13]

Here, the trial court was authorized to find that ARI and Clark were properly served in April 2008 with the complaint, summons, and discovery requests – including a set of interrogatories to each defendant.[14] And it is undisputed that when Rakes filed his motion to strike in September 2009, neither ARI nor Clark had answered, objected, procured an extension, or sought a protective order.[15] Although the record shows that ARI and Clark thereafter responded to the cited discovery requests, "[o]nce a motion for sanctions has been *filed*, their imposition cannot be precluded by a belated response made by the opposite party."[16]

---

[13] *Cameron v. Miles*, 311 Ga. App. 753, 754 (1) (716 SE2d 831) (2011) (punctuation and footnotes omitted).

[14] See generally *Green v. Snellings*, 260 Ga. 751, 752 (1) (400 SE2d 2) (1991) (noting that the facts, even though disputed, authorized finding that defendant had been properly served with pleadings on motion to compel discovery).

[15] See OCGA § 9-11-33 (a) (2) (providing that answers or objections to interrogatories must be answered within 30 or 45 days, unless court has allowed a shorter or longer time).

[16] *Singleton v. Eastern Carriers, Inc.*, 192 Ga. App. 227, 228 (3) (384 SE2d 202) (1989) (citation and punctuation omitted; emphasis in original).

Rakes is correct in that OCGA § 9-11-37 (d) (1) permits an immediate sanction, including dismissal of the answer, against a party for a "total failure" to respond to interrogatories.[17] Further, an order compelling discovery is not a condition precedent for imposing sanctions under OCGA § 9-11-37 (d) (1).[18] Generally, "prior to the imposition of such sanctions, all that is required is a request for sanctions, notice to all parties, and a motion hearing to determine if the offending party's failure to respond was wilful."[19] However, in some "exceptional cases," a hearing is not necessary.[20] "For example, in a case where a trial court has already conducted a hearing on a prior motion to compel, the record may already contain enough evidence of the obstinate party's willful behavior to support the conclusion that any hearing on the issue of willfulness would simply be duplicative."[21]

---

[17] *Mayer v. Interstate Fire Ins. Co.*, 243 Ga. 436, 438-439 (2) (254 SE2d 825) (1979); see *Howard v. Alegria*, 321 Ga. App. 178, 189 (4) (c) (739 SE2d 95) (2013).

[18] *Howard*, supra.

[19] Id.; *Rivers v. Almand*, 241 Ga. App. 565, 566 (1) (527 SE2d 572) (1999) ("[A]n order compelling discovery is not a condition precedent for the imposition of sanctions under subsection (d). All that is required is a motion, notice, and a hearing.") (citations omitted).

[20] *McConnell v. Wright*, 281 Ga. 868, 869 (644 SE2d 111) (2007).

[21] Id. at 869-870, citing *Schrembs v. Atlanta Classic Cars*, 261 Ga. 182-183 (402 SE2d 723) (1991).

But this is not the type of exceptional case wherein a hearing on wilfulness was unnecessary. "'[T]he record . . . would support (though not demand) a finding that [the defendants'] failure to [respond to discovery requests, including interrogatories] resulted from negligence rather than wilfulness.'"[22] ARI and Clark claimed that they had not been served interrogatories, each averring having "only received the complaint and summons . . . ." Meanwhile, as ARI and Clark assert and the record reveals, the parties did engage in some discovery. And prior to the court's order dismissing their answer, ARI and Clark filed a response to Rakes's motion to strike, as well as responses to the interrogatories at issue.

As this court has expounded:

The general rule may be that, although a trial court may impose sanctions, including dismissal, against a [party] without a hearing when the [party] has completely ignored discovery, has not responded to a properly served motion for sanctions, and has failed to request a hearing on the motion, it may not impose the sanction of dismissal without a hearing where . . . the [party] has responded to discovery, albeit in a most tardy manner.[23]

---

[22] Id., quoting *Greenbriar Homes, Inc. v. Builders Ins.*, 273 Ga. App. 344, 347 (5) (615 SE2d 191) (2005).

[23] *ASAP Healthcare Network v. Southwest Hosp. & Medical Center*, 270 Ga. App. 76, 79 (1) (606 SE2d 98) (2004).

15

Accordingly, in *ASAP Healthcare Network v. Southwest Hosp. & Medical Center*,[24] where the plaintiff did not request oral argument on the defendant's motion to dismiss plaintiff's claims, but the plaintiff *did* oppose the motion to dismiss, respond to discovery, and move to reopen discovery, this court reversed the dismissal of the plaintiff's claims and remanded the case to allow the trial court to conduct a hearing on the defendant's motion.[25]

Because the circumstances of this case did not place it within that category of "exceptional cases" for which a hearing on willfulness was unnecessary, we vacate the order granting Rakes's motion to strike the defendants' answer and for entry of default judgment against them as to liability, vacate the final judgment entered on June 20, 2012, and remand the case for proceedings not inconsistent with this opinion.

3. In light of Division 2,[26] we do not reach Rakes's remaining contentions, which contest rulings set forth in the final judgment (that was entered June 20, 2012).

---

[24] Supra.

[25] Id. at 79 (1).

[26] Supra.

16

*Judgment affirmed in part and vacated in part and case remanded. Ellington, P. J., and Branch, J., concur.*